# In the United States Court of Federal Claims

No. 11-100C
Filed: February 27, 2012

\*   \*   \*   \*   \*   \*   \*

| | | |
|---|---|---|
| ALLEY'S OF KINGSPORT, INC., et al., | \* | Takings Claim Arising from Troubled Asset Relief Program (TARP); Motions to Dismiss Pursuant to RCFC 12(b)(1), 12(b)(6); Jurisdiction; Jurisdiction Vis-a-Vis Bankruptcy Court Procedure; Ad Hoc Review; *Penn Central* Regulatory Taking; *Lucas* Categorical Taking; Unique Taking Theory |
|       Plaintiffs, | \* | |
|       v. | \* | |
| THE UNITED STATES OF AMERICA, | \* | |
|       Defendant. | \* | |

\*   \*   \*   \*   \*   \*   \*

*Nancie Gail Marzulla*, Marzulla Law, LLC, Washington, DC, for plaintiffs.

*Brian A. Mizoguchi*, Civil Division, United States Department of Justice, Washington, DC, for defendant.

## ORDER AND OPINION

**HODGES**, Judge.

    Plaintiffs are former owners of Chrysler automobile dealerships. They allege an uncompensated taking of their property rights from the Government's application of the Troubled Asset Relief Program (TARP), 12 U.S.C. § 5211.[1] According to plaintiffs, the takings occurred when the Government required Chrysler to terminate dealerships as a condition of obtaining financial assistance. The dealers' property rights allegedly taken by the Government were franchise contracts, ongoing automobile businesses, and automobile dealer rights under state law.[2]

    Defendant filed motions to dismiss for lack of subject matter jurisdiction and for failure to state a claim for which relief may be granted. For the reasons stated below, we deny both motions.

---

[1] Congress created the Troubled Asset Relief Program (TARP) in response to the global financial crisis in 2008. The Secretary of the Treasury used TARP to assist banks, brokers, automakers, and other businesses in danger of failure.

[2] A bankruptcy court rejected plaintiffs' franchise agreements when Chrysler declared bankruptcy in 2008.

**Jurisdiction**

Defendant asserted during oral arguments that a bankruptcy court's ruling that Chrysler was entitled to reject the dealers' franchise agreements, prevents this court from hearing the dealers' takings case against the United States.[3]   Defendant asserts that the bankruptcy court's ruling approving rejection of the dealers' franchise agreements assumes a finding that no taking could have occurred, and that ruling is res judicata or otherwise binding on this court.

Defendant likens this case to *Allustiarte v. United States*, 256 F.3d 1349 (Fed Cir. 2001), in which the Court of Federal Claims lacked jurisdiction because the facts required that we review rulings made by a bankruptcy judge about matters involving the bankruptcy itself.  This is an entirely different case.  The plaintiff in *Allustiarte* claimed that malfeasance by a trustee in bankruptcy caused him losses from a government taking. *Id.* at 1350-51.  The bankruptcy judge had approved the trustee's actions. *Id.*  The appeals court held that we lacked jurisdiction because this court could not review decisions by the bankruptcy court in areas of their own jurisdiction. *Id.* at 1352.

We are not asked to review bankruptcy court rulings in the administration of a bankruptcy, but to hear a taking claim against the United States.  The better citation for the dealers' claim in this case is *Boise Cascade v. United States*, 296 F.3d 1339 (Fed. Cir. 2002), where the Government sought and obtained an injunction against the plaintiff to prevent its logging without a permit.  The plaintiff filed suit in the Court of Federal Claims, alleging that the injunction resulted in a taking of Boise Cascade's property.  *Id.* at 1344.  The Government argued in that case that *Allustiarte* precluded jurisdiction in this court for the same reasons it has offered here. *Id.*  The Federal Circuit distinguished *Boise Cascade* from *Allustiarte*. *Id.* at 1344-45.  Whether the injunction caused a taking of Boise Cascade's property "was not before the district court, nor could it have been," the appeals court emphasized.  *Id.* at 1344. The court could not have found it necessary to review a district court ruling because the district court could not have had a taking issue before it.  There as here, this court is the only forum available to hear takings claims at the federal trial level.

---

[3] Had a bankruptcy court attempted to bind this court by legal or factual rulings on a takings issue, it would have been acting outside its own jurisdiction.  That did not happen, however.  Here is the bankruptcy court's opinion with regard to an alleged taking, in its entirety:

> [T]he Objection that the rejection [of dealers' contracts] constitutes a violation of the Fifth Amendment is without merit because the [agreement] was a contract between [Chrysler] and [the automobile dealers].  A lien in some collateral that is property of the estate is a necessary prerequisite to a Fifth Amendment Takings Clause claim *in the bankruptcy context*.

*In re Old Carco LLC*, 406 B.R. 180, 211 (Bankr. S.D.N.Y. 2009) (emphasis added) (citations omitted).  The bankruptcy court properly limited its ruling to takings claims "in the bankruptcy context."

The dealers' takings issue before the bankruptcy judge was limited to the court's rejection of their Chrysler franchises.  The bankruptcy court held they could not make such an argument because they were unsecured creditors; only secured creditors may argue a taking in bankruptcy court.  This is a rule of law in the bankruptcy court, and its application is within the province of the bankruptcy court.

Other rulings related to Chrysler's rejection of the dealers' contracts were (1) denial of the dealers' claims to Chrysler's trademarks because "[t]rademarks are not 'intellectual property' under the Bankruptcy Code."; (2) denial of the dealers' claims that rejection of their franchise agreements was a violation of the First Amendment, which the court termed "without merit and far afield"; (3) denial of the dealers' claims that Chrysler violated their automatic stays, also "without merit"; and (4) denial of the dealers' claims to rights under State Dealer Statutes, which the court ruled was "preempted by the Bankruptcy Code."  *In re Old Carco LLC*, 406 B.R. 180, 211-12 (Bankr. S.D.N.Y. 2009).

Bankruptcy court rulings regarding First and Fifth Amendment claims, federal preemption of conflicting state laws, and stays in bankruptcy, provide context for the judge's ruling on alleged takings within the bankruptcy process.  These are procedural rulings handled routinely by the bankruptcy court according to the claims of creditors and the needs of debtors.  The court's consideration of takings claims in bankruptcy was only a part of this process.

The dealer-plaintiffs in this case allege a taking against the United States.  They do not contest decisions of the bankruptcy judge.  They do not ask that we review those decisions. Instead, they complain that the Government's alleged control of the TARP restructuring process resulted in a Fifth Amendment taking as defendant applied TARP to the automobile industry. This court's jurisdiction to hear and adjudicate takings claims against the United States is undisputed. *See, e.g.*, *Lion Raisins, Inc. v. United States*, 416 F.3d 1356, 1362 (Fed. Cir. 2005) ("The Tucker Act broadly provides jurisdiction for 'any claim against the United States founded . . . upon the Constitution.' This includes on its face all takings claims against the United States." (quoting 28 U.S.C. § 1491(a)(1))).

The bankruptcy court's taking decision was a matter internal to bankruptcy procedure; i.e., whether an unsecured creditor could argue a taking to prevent rejection of a creditor's contract.  The judge's taking ruling in the Chrysler bankruptcy was incidental or unrelated to the taking alleged in this court.

### Failure to State a Claim

Defendant's motion to dismiss for failure to state a claim is also based on rulings of the bankruptcy court.  For example, defendant argues that plaintiffs lack a property interest that can be taken because their franchise agreements were unsecured in the bankruptcy proceeding.  *In re Old Carco*, 406 B.R. at 211.  Rule of bankruptcy law prevents unsecured creditors from arguing takings *in bankruptcy court*; it has no application to this court's jurisdiction of Fifth Amendment takings claims against the United States.

Defendant relies on other bankruptcy court rulings to argue that plaintiffs have not stated a proper claim in this court.  For example, defendant contends that the Government acted as any lender of last resort would in a bankruptcy proceeding, and therefore it could not be responsible for a taking.  This is based on the bankruptcy judge's findings that the United States did not control Chrysler for purposes of the Bankruptcy Code, and that decisions relating to the bankruptcy proceeding were made by Chrysler in an exercise of their own business judgment.  *In re Chrysler LLC*, 405 B.R. 84, 107-08 (Bankr. S.D.N.Y. 2009). We have no reason to question those findings of the bankruptcy court, but they are irrelevant to the takings claims in the Court of Federal Claims.  The findings were prerequisites to the bankruptcy court's approval of Chrysler's rejection of the dealers' franchise agreements.  *Id.*[4]

Plaintiffs contend that the Government used TARP assistance to force its vision for the Chrysler restructure prior to and outside of the automaker's bankruptcy proceedings.  The bankruptcy proceedings were separate and apart from the issues before this court.  So far as plaintiffs are concerned, the Chrysler bankruptcy was an irrelevant and complicating event.  Bankruptcy court rulings should not be used by defendant to prevent plaintiffs from pursuing their takings claims in this court.  Defendant's alleged involvement in and control of Chrysler's  bankruptcy proceedings may or may not be important or even relevant in this case.  Regardless, the Government cannot use rulings issued in a bankruptcy proceeding to control prospective legal and factual findings in the Court of Federal Claims in a separate proceeding involving different causes of action.

### Takings Theories

The dealers present unusual allegations that nevertheless create the prima facie feel of a takings case warranting just compensation.  We are not aware of a takings theory that resembles the legal and factual theories offered so far, however.  Counsel have advised us of none.  The theory under which plaintiffs hope to recover does not fit neatly into a normal takings framework.  However, the Supreme Court acknowledged that it has not been able "to develop any 'set formula'" for recognizing a taking by the Government.  *Penn Cent. Transp. Co. v. City of New York*, 438 U.S. 104, 124 (1978) (quoting *Goldblatt v. Hempstead*, 369 U.S. 590, 594 (1962)). For that reason, each case must be determined by the trial court on an "essentially ad hoc" basis.  *Id.*

Plaintiffs may survive a motion to dismiss for failure to state a claim if their Complaint contains enough facts "to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "[A] well-pleaded complaint may proceed even if it appears 'that a recovery is very remote and unlikely.'" *Id.* at 556 (quoting *Scheuer v. Rhodes*, 416 U.S. 232,

---

[4] The bankruptcy court also determined that Chrysler complied with its fiduciary duties, so the debtor could sell its assets, *In re Chrysler*, 405 B.R. at 104-05, and it analyzed whether governmental entities could be good faith purchasers of those assets.  *Id.* at 106-08 ("[A] finding that a purchaser acted in good faith protects the finality of a sale that has been authorized even if it is reversed on appeal.").  Such findings were important to the resolution of Chrysler's bankruptcy, but for the most part, they have no binding application to this case.

236 (1974)).  The court must assume the truth of all well-pleaded factual allegations and draw reasonable inferences in favor of the plaintiff.  *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009).  Plaintiffs' burden of moving forward at this stage is minimal.

The dealers offered a regulatory takings theory during oral arguments, but the takings framework established in *Penn Central* may not be an appropriate means of analyzing plaintiffs' claims in this unusual case.  *See Penn Central*, 438 U.S. at 124.[5]  Categorical takings were the focus of plaintiffs' briefs.  *See Lucas v. South Carolina Coastal Council*, 505 U.S. 1003 (1992).  Takings that fall within the *Lucas* framework arise where the application of state or federal regulations results in the destruction of all reasonable value.  *See Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency*, 535 U.S. 302, 330 (2002) (stating that the categorical rule arising from *Lucas* "is required when a regulation deprives an owner of '*all* economically beneficial uses' of his land" (quoting *Lucas*, 505 U.S. at 1019)).  *Lucas* cases thus far have involved takings of real property.  *See Hawkeye Commodity Promotions, Inc. v. Vilsack*, 486 F.3d 430, 441 (8th Cir. 2007) ("[I]t appears that *Lucas* protects real property only."); *Unity Real Estate Co. v. Hudson*, 178 F.3d 649, 674 (3d Cir. 1999) ("[T]he categorical approach has only been used in real property cases.").

The United States Supreme Court has stressed the importance of considering takings arguments according to surrounding events and circumstances.  *See, e.g.*, *Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419, 426 (1982).  The Court anticipated that unique cases would arise; it wrote, "[o]rdinarily, the Court must engage in 'essentially ad hoc, factual inquiries.'"  *Id.* (quoting *Penn Central*, 438 U.S. at 124).  The Supreme Court addressed the complex nature of Fifth Amendment claims in *Penn Central*:

> The question of what constitutes a 'taking' for purposes of the Fifth Amendment has proved to be a problem of considerable difficulty.  While this Court has recognized that the 'Fifth Amendment's guarantee . . . [is] designed to bar Government from forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole,' this Court, quite simply, has been unable to develop any 'set formula' for determining when 'justice and fairness' require that economic injuries caused by public action be compensated by the government, rather than remain disproportionately concentrated on a few persons.  Indeed, we have frequently observed that whether a particular restriction will be rendered invalid by the government's failure to pay for any losses proximately caused by it depends largely 'upon the particular circumstances [in that] case.'

*Penn Central*, 438 U.S. at 123-24 (citations omitted); *see also PruneYard Shopping Center v. Robins*, 447 U.S. 74, 83 (1980); *Kaiser Aetna v. United States*, 444 U.S. 164, 175 (1979).

---

[5] The *Penn Central* Court identified "several factors that have particular significance" in determining whether a taking in fact occurred.  These factors include (1) the character of the government action, (2) its economic impact, and (3) its interference with reasonable, investment-backed expectations.

The Court's language implies that a trial court's review of taking complaints may disclose unique allegations, and in turn, unique findings.  Plaintiffs should have the opportunity to develop a case that may turn out to be unique.  *See 120 Delaware Ave., LLC v. United States*, 95 Fed. Cl. 627, 632 (2010) ("The novelty of these issues and the divergence of possible analytical approaches are further reasons for allowing Plaintiff to pursue this action beyond the pleading stage.").  Neither the Supreme Court nor the Court of Appeals for the Federal Circuit has limited takings cases to strict or formulaic theories at the pleading stage.  Plaintiffs may discover evidence pretrial that helps to develop a previously unknown taking theory of the type the Supreme Court urged us to consider "ad hoc," and apply "the particular circumstances [of that] case."  *Penn Central*, 438 U.S. at 124.  Such a possibility demands rejection of defendant's motion to dismiss on the pleadings as premature.[6]

Defendant's motions to dismiss for lack of subject matter jurisdiction and for failure to state a claim for which relief may be granted are DENIED.  Counsel may contact the court at any time for assistance with discovery, or to discuss their progress otherwise.

IT IS SO ORDERED.

s/Robert H. Hodges, Jr.
Robert H. Hodges, Jr.
Judge

---

[6] Other theories that may be under consideration by plaintiffs include the possibility that plaintiffs' loss of personal property was the direct, natural, or probable result of the Government's actions, *see Cary v. United States*, 552 F.3d 1373, 1379 (Fed. Cir. 2009) (analyzing inverse condemnation as a taking theory); government-agent taking by Chrysler, whereby the United States takes private property through agents, *see Lion Raisins*, 416 F.3d at 1363 ("[W]hen separate corporate entities act for the United States, the United States is liable for their takings."); and "regulation by deal," *see* Steven M. Davidoff & David Zaring, *Regulation by Deal: The Government's Response to the Financial Crisis*, 61 Admin. L. Rev. 463, 536, 541 (2009) ("[R]egulation by deal is yet another example of administration through an alternative to the traditional administrative law. . . .  [I]n future emergencies the government may manage its authority limitations through regulation by other means when it is unable to turn to a legislative response due to political, timing, or other constraints.  This may be regulation by deal.").