## IN THE UNITED STATES COURT OF FEDERAL CLAIMS

ALLEY'S OF KINGSPORT, INC., et al.,

Plaintiffs,

COLONIAL CHEVROLET CO., INC., et al.,

Plaintiffs,

And

SPITZER MOTOR CITY, INC., et al.,

Plaintiffs,

v.

THE UNITED STATES,

Defendant.

### DEFENDANT'S JOINT REPLY TO PLAINTIFFS' COORDINATED OPPOSITION TO DEFENDANT'S MOTIONS TO DISMISS PLAINTIFFS' AMENDED COMPLAINTS

BENJAMIN C. MIZER
Acting Assistant Attorney General

ROBERT E. KIRSCHMAN, JR.
Director

OF COUNSEL:

KENNETH M. DINTZER
Deputy Director

ELIZABETH M. HOSFORD
Assistant Director

Commercial Litigation Branch
Civil Division
Department of Justice

SETH W. GREENE
VINCENT D. PHILLIPS
Trial Attorneys

P.O. Box 480
Ben Franklin Station
Washington, D.C. 20044
(202) 616-0385
(202) 307-0972 fax
kenneth.dintzer@usdoj.gov

April 7, 2015

Attorneys for Defendant

# TABLE OF CONTENTS

**PAGE**

INTRODUCTION .................................................................................................2

ARGUMENT ....................................................................................................... 4

    I.      Plaintiffs' Amended Complaints Fail To State A Regulatory
          Taking Claim ..................................................................................4

          A.     The Court Should Conclude That Plaintiffs Fail To Allege A
               Regulatory Taking, Either Under *Lucas* Or *Penn Central* .........................4

          B.     Plaintiffs' Complaints Fail To Allege The Economic Loss
               Required To Establish A Regulatory Taking ..............................................7

               1.     AOKI And Colonial Cannot Establish Economic
                    Harm By Alleging That Chrysler And GM Were
                    Entitled To A Government Rescue On Terms More
                    Favorable To The Dealers ..............................................7

                    a.     AOKI And Colonial Cannot Prove Economic
                          Loss By Alleging That Their Dealership Agreements
                          Would Have Survived With *Different* Government
                          Action .........................................................8

                    b.     The Court Should Decline Colonial's Improper
                          Invitation To Reject The Federal Circuit's Remand
                          Instructions ..................................................10

                    2.     Contrary To AOKI's Assertions, Its Complaint
                      Is Not Immune From Dismissal …………………………………11

                    3.     AOKI's Claim That We Disputed The Allegations
                      In Its Complaint And That Dismissal Requires
                      "Sophisticated Factual Findings" Is Incorrect And
                    Unsupported ..................................................11

                    4.     AOKI Cannot Establish Economic Harm By Alleging
                      That Its Franchises Had Value Before Chrysler
                      Terminated Them In Bankruptcy ..................................13

5.     AOKI Cannot Establish Economic Harm By Alleging That Its Dealerships Would Have Retained Value In An "Orderly Chapter 11 Liquidation" Conditioned Upon Government Financing .........................................................14

6.     Colonial's Assertion That Discovery Will "Likely" Reveal The Existence Of "Potential Lenders" For Chrysler And GM Is Undermined By Colonial's Affirmative Allegations ..............................................................18

7.     Spitzer Cannot Plausibly Allege That Fiat Would Single-Handedly Have Purchased The Entire Chrysler Dealer Network Out Of Bankruptcy Had The Government Not Intervened ............................................................................19

8.     Spitzer's Allegation That Chrysler Could Have Pursued An "Orderly Chapter 11 Bankruptcy" Absent Government Funding Is Entirely Unsupported And Speculative .....................20

9.     In The Alternative, Plaintiffs Are Barred From Claiming That Chrysler And GM Would Have Avoided Bankruptcy "But For" The Government's Intervention ...................................21

C.     Even Assuming Plaintiffs Have Adequately Pled Some Form Of Economic Loss, Their Complaints Should Nonetheless Be Dismissed Because Plaintiffs Have Not Alleged Facts Showing That They Can Satisfy The Other Elements Of The *Penn Central* Regulatory Taking Test ........................................................................................22

1.     The Court Is Not Barred From Considering On Remand Whether Plaintiffs Have Alleged Facts Sufficient To Demonstrate That They Address The "Reasonable Expectations" And "Character Of The Governmental Action" Prongs Of The *Penn Central* Test ..................................................22

2.     Plaintiffs Fail To Allege That They Reasonably Expected That Their Dealership Agreements Would Be Continued Absent Government Action ........................................................24

3.     Plaintiffs Fail To Allege Facts That The "Character Of The Governmental Action" Under *Penn Central* Weighs In Favor Of Plaintiffs ...................................................................26

II.     The Court Is Barred From Reconsidering On Remand The Federal Circuit's Rejection Of Colonial's Physical Taking Claim ...................................27

III.    The Court Should Not Take Judicial Notice Of Facts And Materials Neither Alleged In Nor Incorporated Into Colonial's Amended Complaint ........29

IV.    The Court Should Deny Spitzer's Request To Amend Its Complaint ..................30

CONCLUSION ........................................................................................................................30

# TABLE OF AUTHORITIES

**CASES**                                                                    **PAGE(S)**

*A&D Auto Sales, Inc. v. United States*,
    748 F.3d 1142 (Fed. Cir. 2014)................................................................ *passim*

*Alley's of Kingsport, Inc. v. United States*,
    103 Fed. Cl. 449 (2012) .......................................................................... 23

*Armstrong v. United States*,
    364 U.S. 40 (1960).................................................................................... 6

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)...................................................................................2

*Augustine v. Principi*,
    343 F.3d 1334 (Fed. Cir. 2003)............................................................... 23

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)....................................................................... 2, 18, 29

*Brown v. Legal Foundation of Washington*,
    538 U.S. 216 (2003)................................................................................ 29

*Cablevision Sys. Corp. v. F.C.C.*,
    570 F.3d 83 (2d Cir. 2009)...................................................................... 28

*Cienega Gardens v. United States*,
    503 F.3d 1266 (Fed. Cir. 2007)............................................................... 25

*Colonial Chevrolet Co., Inc. v. United States*,
    103 Fed. Cl. 570 (2012) ......................................................................... 23

*Foman v. Davis*,
    371 U.S. 178 (1962)................................................................................ 30

*Gindes v. United States*,
    740 F.2d 947 (Fed. Cir. 1984)................................................................ 10

*Globe Sav. Bank, FSB v. United States*,
    74 Fed. Cl. 736 (2007) ...................................................................... 10, 11

*Halpern v. Principi*,
    384 F.3d 1297 (Fed. Cir. 2004)............................................................... 23

*In re Chrysler LLC*,
    405 B.R. 84 (Bankr. S.D.N.Y. 2009) ........................................................ 17-18

*In re Gen. Motors Corp.*,
    407 B.R. 463 (Bankr. S.D.N.Y. 2009) .......................................................... 25

*Loretto v. Teleprompter Manhattan CATV Corp.*,
    458 U.S. 419 (1982) ...................................................................................... 28

*Nixon v. United States*,
    978 F.2d 1269 (D.C. Cir. 1992) ..................................................................... 6

*Penn Cent. Transp. Co. v. City of New York*,
    438 U.S. 104 (1978) ................................................................................. 2, 25

*Philip Morris, Inc. v. Reilly*,
    267 F.3d 45 (1st Cir. 2001) ............................................................................ 6

*Suel v. Sec'y of Health & Human Servs.*,
    192 F.3d 981 (Fed. Cir. 1999) ................................................................ 23, 28

*United States v. Minicone*,
    26 F.3d 297 (2d Cir. 1994) ........................................................................... 28

## **MISCELLANEOUS AUTHORITIES**

Chrysler Group LLC, *Chrysler Restructuring Plan for Long-Term Viability*
    (Feb. 17, 2009) ...................................................................................... 14-17

4 COLLIER ON BANKRUPTCY ¶ 503.06[2] at 503-27 (Alan N. Resnick
    & Henry J. Sommer eds., 16th ed. rev.) (Bender 2014) .................................. 20

## IN THE UNITED STATES COURT OF FEDERAL CLAIMS

_____

| | |
|---|---|
| ALLEY'S OF KINGSPORT, INC., et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) No. 11-100C |
| v. | ) (Judge Firestone) |
| | ) |
| THE UNITED STATES, | ) |
| | ) |
| Defendant. | ) |

_____ )

| | |
|---|---|
| COLONIAL CHEVROLET CO., INC., et al., | ) |
| on their own behalf and on behalf | ) |
| of a class of others similarly situated, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) No. 10-647C |
| v. | ) (Judge Firestone) |
| | ) |
| THE UNITED STATES, | ) |
| | ) |
| Defendant. | ) |

_____ )

| | |
|---|---|
| SPITZER MOTOR CITY, INC., et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) No. 12-900C |
| v. | ) (Judge Firestone) |
| | ) |
| THE UNITED STATES, | ) |
| | ) |
| Defendant. | ) |

_____ )

## DEFENDANT'S JOINT REPLY TO PLAINTIFFS' COORDINATED OPPOSITION TO DEFENDANT'S MOTIONS TO DISMISS PLAINTIFFS' AMENDED COMPLAINTS

Pursuant to Rule 12(b)(6) of the Rules of the United States Court of Federal Claims

(RCFC), and this Court's orders dated December 22, 2014 and February 24, 2015, defendant, the

United States, respectfully submits this joint reply in support of its motions to dismiss plaintiffs' amended complaints for failure to state a claim upon which relief may be granted.

## INTRODUCTION

Our motions to dismiss demonstrated that plaintiffs have again failed to sufficiently plead the economic loss necessary to establish a regulatory taking. Plaintiffs cannot prove economic loss by "tender[ing] 'naked assertion[s]' devoid of 'further factual enhancement.'" *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). Nor is it sufficient for plaintiffs "to include conclusory loss of value allegations" in the complaints. *See A&D Auto Sales, Inc. v. United States*, 748 F.3d 1142, 1159 (Fed. Cir. 2014). Because plaintiffs have again failed to meet the basic pleading standards necessary to survive a motion to dismiss, the Court should dismiss the complaints. *See id.* at 1158.

On interlocutory appeal, the Federal Circuit held that plaintiffs' original complaints failed to satisfy the "economic impact" prong of the *Penn Central* regulatory taking test. *Id.* (citing *Penn Cent. Transp. Co. v. City of New York*, 438 U.S. 104, 124 (1978)). Nevertheless, the Federal Circuit remanded the cases to this Court to provide plaintiffs an opportunity to cure the deficiencies by amending their complaints "to include specific allegations establishing loss of value." *Id.* at 1159. The appellate court directed plaintiffs to amend their complaints to plausibly allege either: (1) that Chrysler and GM would have avoided bankruptcy, with plaintiffs' franchises retaining value, "but for" the Government's intervention; or (2) that the bankruptcies would have preserved some value for the plaintiffs' franchises. *Id.* at 1158. Absent such allegations, the court explained, plaintiffs could not meet the pleading standards necessary to survive a motion to dismiss. *Id.*

In our opening briefs, we demonstrated that plaintiffs' amended complaints fail to allege any facts plausibly establishing that either Chrysler or GM would have avoided bankruptcy but for Government intervention, or that the bankruptcies would have preserved some value for the plaintiffs' franchises. Instead, contrary to the Federal Circuit's express remand instructions "to show what use or value [their franchises] would have [had] but for the government action," *id.* at 1157, AOKI and Colonial have posited "but for" worlds in which the Government rescues the automakers and all of the terminated Chrysler and GM dealership contracts are retained.

Perhaps recognizing the flaw in that argument, all three plaintiffs, AOKI, Colonial, and Spitzer, fashion alternative, "but for" worlds in which unnamed investors "likely" would have purchased Chrysler's and GM's assets and "likely" would have retained all of the companies' dealerships. Because plaintiffs offered no facts or allegations that render this scenario more than speculative, the Court should dismiss the complaints.

Plaintiffs also alleged that the dealers would have been better off if the automakers had undertaken an "orderly" bankruptcy process. Our motions to dismiss demonstrated that plaintiffs' amended complaints lack plausible facts supporting their premise that Chrysler and GM could have pursued a protracted, "orderly" bankruptcy absent Government financing.

Plaintiffs fare no better in their opposition briefs. AOKI first claims that our showing of implausibility requires "sophisticated factual findings." Even taking the facts alleged by AOKI as true, however, each scenario alleged by AOKI improperly assumes Government financing and cannot form the basis for establishing economic loss.

Second, AOKI and Colonial attempt to recast the Federal Circuit's "economic impact" holding and remand instructions. Indeed, Colonial invites the Court to reject the Federal

Circuit's remand instructions altogether, because Colonial disagrees with the appellate court's decision.

Finally, in response to our motion to dismiss, Spitzer now assumes that, absent Government financial assistance, Fiat, rather than purchasing a 35-percent stake in Chrysler, would instead have purchased the entire Chrysler dealer network out of bankruptcy. This new theory, however, like all of the previous theories offered by plaintiffs, is conclusory and unsupported by allegations of fact. Accordingly, the Court should dismiss the complaints.

Plaintiffs further fail to rebut our demonstration that they have not alleged facts to address the other two elements of the *Penn Central* regulatory taking test – interference with reasonable investment-backed expectations, and character of the Governmental action. Rather, plaintiffs argue that the Court is barred from "reconsidering" these issues on remand. Because neither this Court nor the Federal Circuit decided these issues during the initial proceedings in these cases, and the Federal Circuit explicitly directed this Court to examine the "reasonable expectations" factor, the Court is not barred from considering these issues on remand "in the first instance." *See A&D Auto Sales*, 748 F.3d at 1159.

Because plaintiffs have not properly alleged a regulatory taking claim, the complaints should be dismissed.

## ARGUMENT

### I. Plaintiffs' Amended Complaints Fail To State A Regulatory Taking Claim

#### A. The Court Should Conclude That Plaintiffs Fail To Allege A Regulatory Taking, Either Under *Lucas* Or *Penn Central*

Although the *Penn Central* analysis should apply here, even if the Court were to apply the *Lucas* test, plaintiffs' taking claims still fail. Our initial briefs demonstrated that plaintiffs cannot meet the *Lucas* test for two reasons: (1) plaintiffs failed to allege the complete elimination

of *all* value in the property allegedly taken; and (2) *Lucas* "categorical" takings apply only to land.  This circuit has never applied the *Lucas* analysis to cases involving an alleged taking of intangible property, such as contract rights, and every other circuit has rejected such an expansion.  Def.'s Mot. 17-18 (AOKI); Def.'s Mot. 19-20 (Col.); Def.'s Mot. 18-19 (Spitzer).

In its response, AOKI ignores our analysis and simply states that the cancellation of plaintiffs' "franchises was a complete economic wipeout, leaving them no economically beneficial use."  AOKI Opp. 34.  Similarly, Colonial states that its inventory, physical plants, and other assets "became worthless upon termination" of the dealership agreements, and that "[p]laintiffs' property was unable to be sold, even at a fire sale price."  Col. Opp. 38.  Plaintiffs' assertions are directly at odds with the affirmative allegations in their complaints.

First, Colonial affirmatively alleges that "GM dealers, who refused to accept wind-down money, and Chrysler dealers, have suffered damages by being compelled *to sell inventory, parts, and equipment in a fire-sale* during a period of market illiquidity."  Col. Am. Compl. ¶ 70(b)(2) (emphasis added).  Similarly, AOKI affirmatively alleges that Chrysler's rejection of the dealership agreements in bankruptcy resulted in a "fire sale of [plaintiffs'] dealership property," which included "their existing inventories of new autos and parts."  AOKI Am. Compl. ¶ 196; *see id.* at ¶ 206 (alleging that the Government's intervention resulted in "a forced or fire-sale liquidation" of plaintiffs' property).  Thus, plaintiffs affirmatively allege that they retained their vehicle and parts inventory, physical plants, and other assets, and that they were permitted to sell their property, albeit at "fire-sale" prices.  Col. Am. Compl. ¶ 70(b)(2); AOKI Am. Compl. ¶¶ 196, 206; *see also* Spitzer Am. Compl. ¶¶ 39, 62.  Consequently, plaintiffs' complaints fail to allege the complete elimination of value required to support a *Lucas* regulatory taking.

Further, plaintiffs' sole response to our demonstration that this circuit has never applied the *Lucas* test to cases involving intangible property such as contract rights is that the Federal Circuit has applied the *Lucas* test to cases involving personal property. *See* AOKI Opp. 34-35 (quoting *A&D Auto Sales*, 748 F.3d at 1151); Col. Opp. 37. In *A&D Auto Sales*, however, the Federal Circuit expressly stated that it has never applied the *Lucas* test to cases where, as here, the plaintiffs alleged "takings of intangible property such as contract rights." 748 F.3d at 1151-52. The court also acknowledged that "other circuits view the *Lucas* test as applying only to land." *Id.* at 1151. Thus, plaintiffs misplace their reliance on cases addressing personal property. *See* Col. Opp. 37-38.[1]

Finally, Colonial urges the Court not to decide this issue "now without the benefit of a fully developed record," suggesting that the Federal Circuit "decline[d] to decide the issue" for this reason on interlocutory appeal. *See* Col. Opp. 37 (quoting *A&D Auto Sales*, 748 F.3d at 1152). To the contrary, the Federal Circuit "decline[d] to decide the issue . . . *since the issue ha[d] not been briefed by the parties*." *A&D Auto Sales*, 748 F.3d at 1152 (emphasis added). In any event, the Court does not need "a fully developed record" to decide Colonial's "categorical" taking claim because Colonial's complaint fails to allege the complete elimination of value required to support such a taking. *See* Col. Opp. 37; Def.'s Mot. 19-20 (Col.). Consequently, plaintiffs' *Lucas* claims should be dismissed.

---

[1] For instance, *Armstrong v. United States*, 364 U.S. 40, 46 (1960), did not involve intangible property. Thus, the Federal Circuit held on interlocutory appeal that "this case is distinguishable from *Armstrong*." *A&D Auto Sales*, 748 F.3d at 1151 n.5 (citing *Armstrong*, 364 U.S. at 46-49). Similarly, *Nixon v. United States*, 978 F.2d 1269, 1284-85 (D.C. Cir. 1992), involved the physical seizure of a former President's papers rather than a *Lucas* claim. And *Philip Morris, Inc. v. Reilly*, 267 F.3d 45, 56 (1st Cir. 2001), held that diminution in the value of trade secret information could *not* be viewed as a *Lucas*-type taking.

**B.    Plaintiffs' Complaints Fail To Allege The Economic Loss
        Required To Establish A Regulatory Taking**

To support a regulatory taking claim, a plaintiff must establish an economic loss or

reduction in value of its property.  *See A&D Auto Sales*, 748 F.3d at 1157-58.  In *A&D Auto*

*Sales*, the Federal Circuit held that, to avoid dismissal for failure to properly allege economic

loss, the plaintiffs needed to amend their complaints to sufficiently allege either: (1) that

Chrysler and GM would have avoided bankruptcy, with plaintiffs' franchises retaining value,

"but for" the Government action; or (2) that the bankruptcies would have preserved some value

for the plaintiffs' franchises.  748 F.3d at 1158.  Absent such allegations, the appellate court

concluded, "the terminations actually had no net negative economic impact on the plaintiffs

*because their franchises would have lost all value regardless of the government action*."  *Id.*

(emphasis added).

In our opening briefs, we demonstrated that plaintiffs' amended complaints fail to

sufficiently allege facts satisfying either option.  Def.'s Mot. 18-29 (AOKI); Def.'s Mot. 21-31

(Col.); Def.'s Mot. 19-29 (Spitzer).  Plaintiffs' opposition briefs confirm that plaintiffs have

failed to allege sufficient facts in the complaints to show that their franchises would have

retained any economic value absent Government financial assistance to the automakers.

Dismissal is therefore required.

**1.    AOKI And Colonial Cannot Establish Economic Harm By Alleging
        That Chrysler And GM Were Entitled To A Government Rescue On
        Terms More Favorable To The Dealers**

Both AOKI's and Colonial's amended complaints allege that the former dealers would

have survived if the Government had provided Chrysler and GM financial assistance that was not

conditioned upon dealer terminations in bankruptcy.  AOKI Am. Compl. ¶ 201; Col. Am.

Compl. ¶ 70(c).  AOKI's and Colonial's depiction of "but for" worlds involving Government

assistance to Chrysler and GM directly conflicts with the Federal Circuit's directive that plaintiffs must allege sufficient facts in their amended complaints "to show what use or value [their dealership agreements] would have [had] *but for the government action*." *See A&D Auto Sales*, 748 F.3d at 1157 (emphasis added).

> a.  **AOKI And Colonial Cannot Prove Economic Loss By Alleging That Their Dealership Agreements Would Have Survived With *Different* Government Action**

In their opposition briefs, AOKI and Colonial persist in their attempt to persuade the Court that the Federal Circuit's decision does not preclude them from depicting a "but for" world with *different* Government action. AOKI Opp. 33; Col. Opp. 29-30, 32-36. Plaintiffs' arguments are unsupported and misapprehend the Federal Circuit's decision.

AOKI and Colonial contend that the Federal Circuit could not have meant that plaintiffs must allege that Chrysler and GM would have avoided bankruptcy absent *any* Government financial assistance to the automakers. AOKI Opp. 33; Col. Opp. 32-36. AOKI, in particular, claims that its interpretation of the Federal Circuit's remand instructions is supported by the fact that the Government invested, using bridge loans, $4 billion in TARP funds in Chrysler "on December 31, 2008 – four months before the Government required Chrysler to file bankruptcy (April 30, 2009) and five months before Chrysler provided Dealers' names on the list of dealers to be terminated." AOKI Opp. 33; *see* Col. Opp. 36. Thus, plaintiffs argue, the Federal Circuit's decision permits the dealers to allege that, in the "but for" world, the Government rescues the automakers without requiring dealer terminations. AOKI Opp. 33; Col. Opp. 36. Plaintiffs' arguments are unpersuasive.

First, plaintiffs' arguments have no basis in the Federal Circuit's opinion. On interlocutory appeal, the Federal Circuit explicitly stated that, to prove the economic loss

required to establish a regulatory taking, a plaintiff must "show what use or value its property would have [had] *but for the government action*." *A&D Auto Sales*, 748 F.3d at 1157 (emphasis added). The Federal Circuit did not state that plaintiffs may prove economic loss by alleging that their dealership agreements would have retained value had the Government intervened in a different manner or offered financing without certain conditions. *See id.* at 1157-58.

Moreover, plaintiffs fail to acknowledge that the bridge loans permitted Chrysler and GM to continue operating while they developed restructuring plans for long-term viability. *See* AOKI Am. Compl. ¶¶ 180-82; Col. Am. Compl. ¶¶ 30-31; *see also A&D Auto Sales*, 748 F.3d at 1148. Thus, the existence of the 2008 bridge loans have no bearing on the Federal Circuit's direction to plaintiffs to establish that they could have survived absent Government intervention. To the contrary, the need for Government-provided bridge loans supports the inference that Chrysler and GM could not have survived without Government financing even before they decided to file for bankruptcy.

Colonial contends that any "but for" world must include Government assistance to the automakers because they were "too big to fail," and it is "completely implausible" and "inconceivable" that the Government would not have provided any financial assistance to the automakers. Col. Opp. 33-35; *see id.* at 1-2. Even assuming that Colonial's assessment of the then-prevailing political sentiment is correct, Colonial's assertions fail "to show what use or value its property would have had" absent Government assistance to the automakers. *See A&D Auto Sales*, 748 F.3d at 1157. As Colonial acknowledges, "the Federal Circuit held that Colonial lacked the pleading of non-speculative hypothetical facts of what might have happened but for 'the government action' (also phrased as an 'intervention') of providing 'financial assistance' to 'the automakers.'" Col. Opp. 32 (quoting *A&D Auto Sales*, 748 F.3d at 1158). Colonial's

acknowledgment of the Federal Circuit's directive undermines its attempt to justify a "but for" world that includes Government financial assistance to the automakers.

Thus, the Court should reject AOKI's and Colonial's attempt to recast the Federal Circuit's remand instructions to permit plaintiffs to prove economic loss by alleging that their dealership agreements would have survived with *different* Government action.

### b. The Court Should Decline Colonial's Improper Invitation To Reject The Federal Circuit's Remand Instructions

As demonstrated above, Colonial acknowledges the Federal Circuit's holding that the Government action at issue in this case is the Government's financial assistance to the automakers. Nonetheless, Colonial appears to suggest that the appellate court might have viewed the "but for" world differently, and the court's remand instructions might have been different, had the court been presented with Colonial's "too big to fail" argument. *See* Col. Opp. 29, 33-35.

Contrary to Colonial's assertions, the Federal Circuit had ample opportunity to consider Colonial's "too big to fail" argument because Colonial raised, and relied heavily upon, the argument in its interlocutory appeal brief and during oral argument. *See, e.g.*, Brief for Plaintiff-Appellee at 5-6, 16, 32-33, *Colonial Chevrolet Co., Inc. v. United States*, No. 2013-5020 (Fed. Cir. May 9, 2013) (ECF No. 30). Because Colonial's "too big to fail" argument was presented to the appellate court and the court nonetheless remanded to provide plaintiffs an opportunity to allege that the automakers would have survived absent Government assistance, this Court is precluded from reexamining the appellate court's ruling. *See Globe Sav. Bank, FSB v. United States*, 74 Fed. Cl. 736, 740 (2007) ("a trial court acting on a remand order, may not reexamine any issues that were addressed either explicitly or implicitly by the appellate court.") (citing *Gindes v. United States*, 740 F.2d 947, 949 (Fed. Cir. 1984)).

Colonial also suggests that, to the extent the Federal Circuit ordered plaintiffs to amend their complaints to show that their franchises would have survived absent Government intervention, such an order is at odds with prevailing takings law because Colonial alleges that the dealer terminations, standing alone, were the actions that effected the taking. *See* Col. Opp. 28-29. Regardless of whether Colonial agrees with the Federal Circuit's ruling, however, it is law of the case, and this Court is barred from reconsidering the appellate court's decision. *See Globe Sav. Bank*, 74 Fed. Cl. at 740.

### 2. Contrary To AOKI's Assertions, Its Complaint Is Not Immune From Dismissal

AOKI argues that our motion to dismiss improperly seeks to dismiss AOKI's "entire Complaint" on remand. AOKI Opp. 1; *see id.* at 13-14. To the extent AOKI argues that only the new allegations related to economic loss are subject to dismissal, AOKI is simply wrong. The Court must dismiss AOKI's "entire" complaint because it has again failed to sufficiently plead the economic loss necessary to establish a regulatory taking. *See A&D Auto Sales*, 748 F.3d at 1157-59.

### 3. AOKI's Claim That We Disputed The Allegations In Its Complaint And That Dismissal Requires "Sophisticated Factual Findings" Is Incorrect And Unsupported

In an effort to avoid dismissal of its complaint, AOKI attempts to create a factual dispute where none exists. In doing so, AOKI mischaracterizes our arguments, claiming that we have challenged the "truthfulness" of AOKI's allegations. AOKI Opp. 1, 3, 5, 15-16. Consequently, AOKI claims, we have asked "this Court to make sophisticated factual findings regarding the Dealers' businesses, finances and the economy before hearing any evidence – just on [our] say-so." *Id.* at 23. We have never made these arguments, nor does AOKI cite to our brief to support its assertions.

AOKI's amended complaint attempts to demonstrate loss by alleging that plaintiffs' dealerships would have maintained economic value under three alternative scenarios presented in Chrysler's February 17, 2009 restructuring plan. AOKI Am. Compl. ¶ 200. As demonstrated in our opening brief, however, each of the scenarios identified in Chrysler's restructuring plan were contingent upon the company receiving billions of dollars in additional Government funding. Def.'s Mot. 19-23 (AOKI). Thus, contrary to the Federal Circuit's directive, AOKI, in relying on the Chrysler restructuring plan, alleged a "but for" world that relied on Government financial assistance. *Id.* at 19. Our motion to dismiss simply did not contend, as AOKI claims, that Chrysler's restructuring plan was "implausible" or "bogus." *See* AOKI Opp. 17, 26.

AOKI also claims that we disputed its allegation that the former dealers' franchises had value before Chrysler terminated the dealership agreements in bankruptcy in June 2009. *See* AOKI Opp. 1-5, 15-17, 24-26, 32. Specifically, AOKI contends that we argued that the termination of the dealership agreements in bankruptcy "had no economic impact because all Chrysler dealerships were already worthless." *Id.* at 23; *see id.* at 16-17, 24-26. We have not made that argument in support of a motion to dismiss. Rather, as AOKI acknowledges, we argued on interlocutory appeal that "the plaintiffs have failed to sufficiently plead economic loss, and that in reality the franchise agreements were worthless *absent the government's financial assistance to the automakers*." *Id.* at 23 (quoting *A&D Auto Sales*, 748 F.3d at 1158) (emphasis added). AOKI's argument ignores the qualifying phrase at the end of the Federal Circuit's statement.

Moreover, we argued on remand that AOKI's amended complaint fails to allege *any* facts to indicate that, *absent Government funding*, Chrysler would have avoided bankruptcy, and plaintiffs' dealerships *would have maintained their economic value*. Def.'s Mot. 19-29 (AOKI).

Consequently, the Court should reject AOKI's repeated attempts to mischaracterize our arguments in an effort to create an issue of fact where none exists.

### 4. AOKI Cannot Establish Economic Harm By Alleging That Its Franchises Had Value Before Chrysler Terminated Them In Bankruptcy

AOKI argues that the Federal Circuit specifically directed plaintiffs to amend their complaints "to allege facts showing that their franchises were not worthless before the Government shut them down," and that AOKI has followed the appellate court's directive. AOKI Opp. 23. AOKI's argument misstates the Federal Circuit's remand instructions.

As noted above, the Federal Circuit specifically stated that the plaintiffs must amend their complaints to allege that "Chrysler would have avoided bankruptcy but for the government's intervention and that the franchises *would have had* value in that scenario, or that such bankruptcies *would have* preserved some value for the plaintiffs' franchises[.]" *A&D Auto Sales*, 748 F.3d at 1158 (emphasis added). Absent such allegations, the appellate court concluded, "the terminations actually had no net negative economic impact on the plaintiffs because their franchises *would have* lost all value regardless of the government action." *Id.* (emphasis added). Thus, AOKI's claim that its franchises "*had . . . value*" (AOKI Opp. 16 (emphasis added)) before Chrysler terminated them in bankruptcy in June 2009 fails "to show what use or value its [franchises] *would have had*" absent Government assistance to Chrysler. *See A&D Auto Sales*, 748 F.3d at 1157 (emphasis added).

Further, AOKI improperly suggests that Chrysler would have been able to continue operating until that time without the $4 billion bridge loan it received from the Government on January 2, 2009, or without the Government guarantee of warranties that AOKI says were announced in late March 2009. *See* AOKI Opp. 17-18; AOKI Am. Compl. ¶¶ 180-82; *see also*

*A&D Auto Sales*, 748 F.3d at 1148.  As the Federal Circuit recognized on interlocutory appeal, the bridge loan kept Chrysler "from having to cease operations" as the Government considered whether to provide the company with long-term assistance.  *See A&D Auto Sales*, 748 F.3d at 1148.  Thus, AOKI's allegations that the former dealers were able to sell and service cars and generate "substantial income streams up to June 9, 2009," AOKI Opp. 24, fail "to show what use or value its [franchises] *would have had*" absent the bridge loan and the warranty guarantee program.  *See A&D Auto Sales*, 748 F.3d at 1157 (emphasis added).

  **5. AOKI Cannot Establish Economic Harm By Alleging That Its Dealerships Would Have Retained Value In An "Orderly Chapter 11 Liquidation" Conditioned Upon Government Financing**

  We demonstrated in our opening brief that AOKI offers no facts or allegations to render plausible its claim that its dealerships would have retained value in an "orderly" Chapter 11 liquidation – the "third[,] worst case scenario" presented in Chrysler's February 17, 2009 restructuring plan.  Def.'s Mot. 23-29 (AOKI).

  AOKI first contends that our argument contradicts President Bush's December 18, 2008 statement that "if restructuring cannot be accomplished outside of bankruptcy, the [bridge] loans will provide time for [Chrysler] to make the legal and financial preparations necessary for an orderly Chapter 11 process that offers a better prospect of long-term success . . . ."  AOKI Opp. 18 (citation omitted).  President Bush's statement, however, does not support AOKI's apparent suggestion that, once the bridge loan was exhausted, Chrysler could have pursued an "orderly" Chapter 11 restructuring without additional financing.  Rather, Chrysler's February 17, 2009 restructuring plan stated that Chrysler would require, in addition to the Government's earlier bridge loan, $24 billion in debtor-in-possession financing for an "orderly wind down."  Chrysler Restructuring Plan at 11.  Further, as demonstrated in our opening brief, AOKI has failed to

allege facts sufficient to support a finding that Chrysler could have pursued an "orderly" Chapter 11 bankruptcy that would have preserved the value of plaintiffs' dealerships without any Government financing. Def.'s Mot. 25-29 (AOKI).

AOKI alleges that, in an "orderly" Chapter 11 liquidation, Chrysler could have utilized its dealer network to service existing vehicles "to maximize its revenue opportunities and thus recoveries to its creditors[.]" AOKI Am. Compl. ¶ 197. Thus, AOKI alleges, "[e]ven if Chrysler had stopped manufacturing cars altogether," the dealers "could have continued profitably servicing [Chrysler] vehicles for years into the future," just like "Suzuki did." AOKI Opp. 19 (citing Am. Compl. ¶ 197); *see id.* at 24-25.

AOKI's allegations are wholly unsupported and speculative. AOKI offers no statement by Chrysler to support its assertions. Indeed, AOKI has alleged no facts that could support a finding that, had Chrysler ceased manufacturing cars, the automaker would have or could have maintained a "parts-and-service-only" dealer network to provide warranty services for Chrysler vehicles already on the road. *See* AOKI Opp. 19, 24; AOKI Am. Compl. ¶ 197. To the contrary, Chrysler informed Treasury that, in an "orderly" liquidation, "3,330 dealers with 140,000 employees [would] go out of business." Chrysler Restructuring Plan at 162; *see id.* at 11 (an "orderly wind down" would result in "over 3,300 dealers failing"). Moreover, AOKI has failed to allege facts that could support a finding that Chrysler could have maintained its entire, pre-bankruptcy dealer network for "years into the future" (*see* AOKI Opp. 19) absent debtor-in-possession financing from the Government. Def.'s Mot. 25-29 (AOKI).

AOKI also attempts to equate Chrysler's circumstances to that of Suzuki. Suzuki's unspecified, undated restructuring of its American operations is irrelevant to the question of whether AOKI has alleged sufficient facts to plausibly infer that, in late 2008 or early 2009,

Chrysler could have pursued an "orderly" Chapter 11 liquidation *absent Government financing*. For instance, AOKI has not alleged that Suzuki obtained billions of dollars in financing from private sector lenders in late 2008, in the midst of an "unprecedented global credit crisis" that froze the financial liquidity markets. *See* AOKI Am. Compl. ¶¶ 174-75. Thus, the only commonality between Suzuki and Chrysler is that both companies sold cars; AOKI's assumption that Chrysler would have fared as well as Suzuki absent Government intervention is wholly unsupported and implausible.

AOKI also argues that the dealers would have had "the *usual* 24-30 month period in a bankruptcy liquidation to sell off their existing new car inventory." AOKI Opp. 19 (emphasis added). As support for its argument, AOKI simply points to a statement in Chrysler's restructuring plan indicating that Chrysler's "[i]nability to secure $24 billion of bankruptcy [debtor-in-possession] financing leads to [a] liquidation over a 24 to 30 month period . . . ." AOKI Opp. 29 (quoting Chrysler Restructuring Plan at 162). This statement is taken out of context. Immediately below that statement, Chrysler acknowledges that, in a Chapter 11 liquidation, "3,300 dealers with 140,000 employees [would] go out of business," and "31 million vehicle owners [would] lose significant value, warranties, parts, and service." Chrysler Restructuring Plan at 162. Thus, contrary to AOKI's assertions, Chrysler did not expect that, in a Chapter 11 liquidation, its dealers would continue to sell new cars, with the promise of warranties, parts, and service that purchasers of new cars expect.

Further, Chrysler's statement on page 162 of its restructuring plan, taken out of context, is directly contradicted by its statement on page 11 that, "in an orderly [Chapter 11] wind down," Chrysler would seek to obtain from both the Government and private sector lenders approximately "$24 billion [in debtor-in-possession financing] over a two-year period."

Chrysler Restructuring Plan at 11 (citing page 165 therein). AOKI does not attempt to reconcile Chrysler's contradictory statements, much less explain how Chrysler could have liquidated over a two-year period without the financing that the company believed would be necessary for such a lengthy process.

In any event, AOKI's suggestion that debtors like Chrysler automatically obtain "24 to 30 months" to wind down their operations in a Chapter 11 bankruptcy process is completely unsupported in AOKI's pleadings. *See* AOKI Opp. 19 (citing Am. Compl. ¶ 203). As demonstrated in our initial brief, AOKI has failed to allege facts that, if proven, could support a finding that Chrysler could have liquidated over an "estimated period" of 24 to 30 months on its own. Def.'s Mot. 25-28 (AOKI).

Finally, AOKI contends that it plausibly alleged that "the stronger Chrysler [vehicle] brands" would have been purchased by "interested parties" as part of an "orderly" Chapter 11 asset sale. AOKI Opp. 19 (citing Am. Compl. ¶ 196). As support for its argument, AOKI relies on a declaration submitted to the Chrysler bankruptcy court by Robert Manzo, Chrysler's restructuring advisor. *Id.* at 20 (citation omitted). AOKI claims that Mr. Manzo's declaration shows that "several parties were interested in purchasing Chrysler vehicle lines or dealership agreements." *Id.* In that same declaration, however, Mr. Manzo stated that "[n]one of these potential bids have since materialized into anything closely resembling a serious offer requiring further consideration." Manzo Decl. at 12 ¶ 30, *In re Chrysler LLC*, Case No. 09-50002, ECF No. 2562 (Bankr. S.D.N.Y. May 26, 2009). Thus, Mr. Manzo concluded, "Chrysler has received no interest from any serious bidders regarding a purchase of the Company's assets, and none of these potential bids present a viable alternative to the Fiat Alliance." *Id.* at 13 ¶ 31. Mr. Manzo's conclusion is of course consistent with the Chrysler bankruptcy court's decision. *See In*

*re Chrysler LLC*, 405 B.R. 84, 96, 98, 105, 107-08 (Bankr. S.D.N.Y. 2009) (*Chrysler Sale Op'n*).

Contrary to AOKI's assertions, Mr. Manzo's declaration actually highlights the implausibility of AOKI's allegation that Chrysler would have been able to sell its assets to "potential bidders" without Government financing. *See* Def.'s Mot. 23-25 (AOKI) (citing Am. Compl. ¶ 203).

**6.    Colonial's Assertion That Discovery Will "Likely" Reveal
The Existence Of "Potential Lenders" For Chrysler And GM
<u>Is Undermined By Colonial's Affirmative Allegations</u>**

We demonstrated in our initial brief that Colonial's amended complaint fails to allege any facts to indicate that either Chrysler or GM could have pursued an "orderly" Chapter 11 liquidation or bankruptcy absent Government funding. Def.'s Mot. 23 (Col.) (citing Am. Compl. ¶ 70(b)(1)). We further demonstrated that Colonial does not identify a single, private-sector lender that was allegedly willing and able to provide either Chrysler or GM with the debtor-in-possession financing required for an "orderly" liquidation or bankruptcy. *Id.* at 25 (citing Am. Compl. ¶ 70(b)(1)).

Colonial contends, in response, that discovery from the Government will "likely" establish the existence of "potential lenders who were willing to invest in the financial future of GM and Chrysler or to refinance lines of their business." Col. Opp. 21. Colonial's request for discovery to find facts not alleged in the complaint contradicts the Supreme Court's repeated admonition that "a district court must retain the power to insist upon some specificity in pleading before allowing a potentially massive factual controversy to proceed." *Twombly*, 550 U.S. at 558 (citation omitted).

Moreover, Colonial's assertion collides with the affirmative allegations in its own amended complaint. Colonial affirmatively alleges that, in late 2008, the American economy collapsed and the credit markets froze, leaving "GM and Chrysler, like many American industries," to ask the Government for "financial assistance." Col. Am. Compl. ¶¶ 17, 70; *see also* Col. Opp. 1-2. Colonial also acknowledges that Chrysler and GM would have experienced liquidation or bankruptcy absent Government financing. Col. Am. Compl. ¶ 70(b); *see id.* at ¶ 25 (alleging that the Government decided not to let Chrysler and GM "fail"). Indeed, Colonial's response brief repeatedly identifies the Government as "the lender of last resort." Col. Opp. 5, 8, 9, 25, 34. Colonial's express acknowledgement that the Government was "the lender of last resort" affirmatively undermines Colonial's assertion that discovery from the Government will "likely" demonstrate that other "potential lenders" would "likely" have stepped in to save the automakers and plaintiffs' franchises without Government financial assistance. *See* Def.'s Mot. 28 (Col.). Put simply, Colonial has pled the factually inconsistent points that (1) the Government had to lend to the automakers to keep them from failing, and (2) if the Government had not lent money to the automakers, some other lender would have. These pleadings fail to satisfy Colonial's obligations and doom its complaint.

### 7. Spitzer Cannot Plausibly Allege That Fiat Would Single-Handedly Have Purchased The Entire Chrysler Dealer Network Out Of Bankruptcy Had The Government Not Intervened

In its amended complaint, Spitzer alleged that, absent Government intervention, Fiat would have purchased a "35% stake" in Chrysler to gain "immediate access to its stateside manufacturing facilities and established dealer network, including the Plaintiffs." Spitzer Am. Compl. ¶¶ 40(c), (d). In its opposition brief, however, Spitzer has apparently abandoned that theory and speculates instead that Fiat would have purchased Chrysler's dealership network to

gain a foothold in the United States market, and would not have acquired the automaker's manufacturing facilities. Spitzer Opp. 5-7.

Spitzer's new theory is nothing more than rank speculation. As demonstrated in our opening brief, Spitzer offers no statement by Fiat or anyone else to support its assertion that, without substantial Government assistance, Fiat would have been interested in acquiring Chrysler's entire dealer network. Def.'s Mot. 23 (Spitzer). Consequently, Spitzer has failed to allege facts to support its claim that plaintiffs' dealerships would survived absent Government intervention. *Id.* at 24.

> 8. **Spitzer's Allegation That Chrysler Could Have Pursued An "Orderly Chapter 11 Bankruptcy" Absent Government Funding Is Entirely Unsupported And Speculative**

We demonstrated in our opening brief that Spitzer has failed to allege any facts to plausibly infer that, absent billions of dollars in Government funding, Chrysler could have pursued an "orderly Chapter 11 bankruptcy process" that would have preserved the value of plaintiffs' dealerships. Def.'s Mot. 25-29 (Spitzer).

In response, Spitzer simply concludes that Chrysler could have pursued such a bankruptcy because "many [Chapter 11 bankruptcy] expenses . . . are halted or jettisoned during the bankruptcy process," and "Chrysler had $1.9 billion of cash on hand." Spitzer Opp. 8.

First, contrary to Spitzer's assertions, bankruptcy law does not permit debtors to avoid paying postpetition expenses, as opposed to claims arising from a prepetition transaction with a debtor. *See* 4 COLLIER ON BANKRUPTCY ¶ 503.06[2] at 503-27 (Alan N. Resnick & Henry J. Sommer eds., 16th ed. rev.) (Bender 2014) ("[A]llowing administrative expense priority under section 503(b)(1) is important to provide an incentive for creditors to continue doing business with a debtor and an incentive for others to engage in business transactions with the debtor.").

Thus, if a debtor fails to pay those expenses and allows administrative claims to accrue unpaid, a bankruptcy court will dismiss the debtor's case or convert it to a Chapter 7 liquidation. *See* Def.'s Mot. 26 (Spitzer). Moreover, Spitzer has not alleged that Chrysler's "$1.9 billion" was sufficient to permit the company to pursue a protracted, "orderly" liquidation. *Id.* at 26-27.

> **9.     In The Alternative, Plaintiffs Are Barred From Claiming That Chrysler And GM Would Have Avoided Bankruptcy "But For" The Government's Intervention**

In our initial briefs, we established that collateral estoppel bars plaintiffs from claiming that Chrysler and GM would have avoided "immediate liquidation" absent Government intervention. Def.'s Mot. 29-31 (AOKI; Spitzer); Def.'s Mot. 32-34 (Col.).

Plaintiffs do not dispute that the bankruptcy courts held that, absent Government intervention, Chrysler and GM would have faced "immediate liquidation." Plaintiffs, rather, claim that the Federal Circuit already rejected our collateral estoppel argument on interlocutory appeal, holding that "[w]hatever the bankruptcy court found is immaterial." AOKI Opp. 21-22; Col. Opp. 38. Plaintiffs' argument stretches the meaning of the appellate court's statement and ignores the context in which the statement was made.

On interlocutory appeal, the Federal Circuit held that the bankruptcy court's "*findings on good faith* are not collateral estoppel *on the issue of coercion*." *A&D Auto Sales*, 748 F.3d at 1156 (emphasis added). Thus, the appellate court, in making the statement identified by plaintiffs, meant that "[w]hatever the bankruptcy court found [on the issue of 'good faith'] is immaterial [to the issue of coercion]." *See id.* The Federal Circuit's statement does not mean that plaintiffs may relitigate the "*identical*" issue decided by the bankruptcy courts, *see id.* (emphasis in original) – namely, whether Chrysler and GM would have faced "immediate liquidation" absent Government intervention.

**C.** **Even Assuming Plaintiffs Have Adequately Pled Some Form Of Economic Loss, Their Complaints Should Nonetheless Be Dismissed Because Plaintiffs Have Not Alleged Facts Showing That They Can Satisfy The Other Elements Of The *Penn Central* Regulatory Taking Test**

In our initial briefs, we demonstrated that, even assuming that plaintiffs have pled facts sufficient to show that the former dealers would have retained *some* economic value absent Government intervention (which they have not), the complaints should nonetheless be dismissed because plaintiffs have failed to allege facts that address the other two elements of the *Penn Central* regulatory taking test – interference with reasonable investment-backed expectations, and character of the Governmental action. *See* Def.'s Mot. 31-36 (AOKI); Def.'s Mot. 34-39 (Col.); Def.'s Mot. 31-35 (Spitzer). In response, plaintiffs wrongly claim that the Court is precluded from considering these issues by the "law of the case doctrine." Further, plaintiffs attempt – unsuccessfully – to demonstrate that the amended complaints adequately pled each of the *Penn Central* elements.

**1.** **The Court Is Not Barred From Considering On Remand Whether Plaintiffs Have Alleged Facts Sufficient To Demonstrate That They Address The "Reasonable Expectations" And "Character Of The Governmental Action" Prongs Of The *Penn Central* Test**

Plaintiffs argue that this Court is barred by the "law of the case doctrine" from "reconsidering" on remand whether plaintiffs have adequately alleged, as required by *Penn Central*, interference with investment-backed expectations or that the character of the Governmental action supports a regulatory taking claim. *See* AOKI Opp. 1-3, 5-6, 13-14, 34-35; Col. Opp. 30; Spitzer Opp. 1-2, 9. The law of the case doctrine does not apply here because neither this Court nor the Federal Circuit has decided whether plaintiffs have adequately pled *Penn Central*'s governmental-action and investment-backed-expectations prongs.

Under the law of the case doctrine, "a court will generally refuse to reopen or reconsider what has already been decided at an earlier stage of the litigation." *Suel v. Sec'y of Health & Human Servs.*, 192 F.3d 981, 985 (Fed. Cir. 1999). "A necessary predicate to application of law of the case is, therefore, that the legal issue in question has actually been decided." *Augustine v. Principi*, 343 F.3d 1334, 1339 (Fed. Cir. 2003). The law of the case doctrine, then, does not apply "to issues neither presented nor decided in a former proceeding in the case." *Halpern v. Principi*, 384 F.3d 1297, 1301 (Fed. Cir. 2004) (citation omitted).

First, this Court has not decided these issues, and plaintiffs do not cite to any of the Court's 2012 orders to support their argument. *See Alley's of Kingsport v. United States*, 103 Fed. Cl. 449 (2012); *Colonial Chevrolet Co., Inc. v. United States*, 103 Fed. Cl. 570 (2012); *see also* Order, *Alley's of Kingsport*, No. 11-100C (ECF No. 44) (Apr. 12, 2012); Order, *Colonial Chevrolet*, No. 10-647C (ECF No. 51) (Apr. 12, 2012).

Nor did the Federal Circuit decide these issues on interlocutory appeal. The appellate court specifically noted that the parties did not address the "reasonable expectations" factor of the *Penn Central* analysis on interlocutory appeal, and directed this Court, on remand, to analyze this factor "in first instance." *A&D Auto Sales*, 748 F.3d at 1159. AOKI even acknowledges that "[t]he Federal Circuit did not rule on [the 'reasonable expectations'] issue" on interlocutory appeal. AOKI Opp. 37.

In addition, the Federal Circuit did not analyze, let alone decide, the "character of the governmental action" factor of the *Penn Central* analysis. This Court, therefore, retains full discretion to consider this factor as part of its *Penn Central* analysis on remand. *See Augustine*, 343 F.3d at 1339.

Because neither this Court nor the Federal Circuit resolved whether plaintiffs have properly pled facts to address the investment-backed-expectations and the governmental-action prongs of the *Penn Central* test, law of the case has no application. *See id.* Consequently, this Court may consider these issues on remand.

### 2. Plaintiffs Fail To Allege That They Reasonably Expected That Their Dealership Agreements Would Be Continued Absent Government Action

Addressing the merits of our arguments, plaintiffs assert that, at the time they executed their dealership agreements, they could not have expected that the Government would enact TARP in 2008 and the Auto Task Force would terminate plaintiffs' agreements. AOKI Opp. 35-36; *see* Col. Opp. 30. Plaintiffs further assert that they reasonably expected that their businesses would be continued because state dealer statutes prohibited Chrysler and GM from arbitrarily terminating the dealers. AOKI Opp. 36; Col. Opp. 30. Plaintiffs' assertions, however, ignore the Federal Circuit's directive in *A&D Auto Sales*.

On interlocutory appeal, the Federal Circuit directed this Court, on remand, to examine "the reasonableness of the plaintiffs' expectation that their franchise agreements *would be continued absent government action*." *A&D Auto Sales*, 748 F.3d at 1159 (emphasis added). Plaintiffs do not address – let alone resolve – the issue identified by the Federal Circuit on interlocutory appeal: Could the plaintiffs have had a reasonable expectation when the dealership agreements were signed, that their agreements "*would be continued absent government action*" when the automakers had reached insolvency. *See id.* (emphasis added). As demonstrated in our opening briefs, plaintiffs have not alleged, nor presented arguments in support of, facts demonstrating that they reasonably expected to continue operating their dealerships or to retain

their dealership agreements' value in the face of the automakers' financial dissolution.  Def.'s

Mot. 33-34 (AOKI; Spitzer); Def.'s Mot. 35-38 (Col.).

Moreover, to support a regulatory taking claim, a plaintiff must establish that it

reasonably could have expected to receive the benefits denied by the Government action at the

time it made the investment.  *Cienega Gardens v. United States*, 503 F.3d 1266, 1289 (Fed. Cir.

2007).  Plaintiffs concede that they could not have expected the automakers to receive TARP

funds at the time they executed their dealership agreements.  *See* AOKI Opp. 36.  Consequently,

the Government's investment of TARP funds in Chrysler and GM in 2008 and 2009 could not

have "interfered with distinct investment-backed expectations."  *See Penn Central*, 438 U.S. at

124.

Plaintiffs also misplace their reliance on state dealer statutes.  *See* AOKI Opp. 36; Col.

Opp. 30.  Such statutes do not provide – and plaintiffs do not claim otherwise – that dealers may

continue operating their dealerships or retain their dealership agreements' value when their

contractual counterparties face collapse and seek bankruptcy protection.  Nor do such statutes

prohibit debtors like Chrysler and GM from using Federal bankruptcy laws to reject executory

contracts in bankruptcy.  *See* Def.'s Mot. 33 (AOKI; Spitzer); Def.'s Mot. 36 (Col.).  Thus,

plaintiffs were aware (or should have been aware) at the time they signed their dealership

agreements that if either Chrysler or GM sought bankruptcy protection, their agreements would

be subject to termination or a loss in value, including potentially all of their value.  *See In re*

*Gen. Motors Corp.*, 407 B.R. 463, 514 (Bankr. S.D.N.Y. 2009) (*GM Sale Op'n*) ("For decades,

counterparties to executory contracts with bankruptcy debtors have known that their agreements

could be rejected").

Because plaintiffs could not have had a reasonable investment-backed expectation that their dealership agreements would be continued absent Government action, the Court should reject plaintiffs' taking claims. Def.'s Mot. 32-34 (AOKI; Spitzer); Def.'s Mot. 34-38 (Col.).

### 3. Plaintiffs Fail To Allege Facts That The "Character Of The Governmental Action" Under *Penn Central* Weighs In Favor Of Plaintiffs

As we established in our initial briefs, the character of the Government's actions – as rescue lender – cannot support a taking claim. Def.'s Mot. 35-36 (AOKI); Def.'s Mot. 38-39 (Col.); Def.'s Mot. 34-35 (Spitzer). We also demonstrated that plaintiffs' complaints affirmatively recognize that the Government, in rescuing the auto industry, did not allocate any additional burden to the dealers. *Id.*

In response, AOKI and Colonial again mischaracterize our arguments, claiming that we argued that the phrase "character of the governmental action" means that the United States cannot have liability when it takes property rights for an important public purpose. AOKI Opp. 38; Col. Opp. 31. We have not made that argument. Rather, we explained that to the extent a burden was imposed on plaintiffs, it was the product of the economy and the automakers' financial condition – not the result of Government action. Def.'s Mot. 35-36 (AOKI); Def.'s Mot. 38-39 (Col.).

AOKI and Colonial also argue that the "character of the governmental action" weighs in favor of a taking because the Government's rescue of the auto industry targeted and imposed a disproportionate burden on the plaintiff dealers. *See* AOKI Opp. 38-40; Col. Opp. 31-32. Plaintiffs, however, have not *alleged* that the Government, in rescuing the auto industry, imposed an additional burden on the dealers. Indeed, both AOKI's and Colonial's complaints affirmatively acknowledge that Chrysler and GM would have experienced liquidation or

bankruptcy absent Government financing.  AOKI Am. Compl. ¶¶ 179, 183; Col. Am. Compl.

¶¶ 24-25, 70(b).  Thus, to the extent a burden was imposed on plaintiffs, it was a product of the

economy and Chrysler's and GM's financial condition – not the result of Government action.

*See* Def.'s Mot. 35 (AOKI; Spitzer); Def.'s Mot. 38 (Col.).

Because the Government's investments in Chrysler and GM did not allocate any

additional burden to the dealers, plaintiffs have not alleged facts that – if true – could satisfy the

third prong of the *Penn Central* test, and the complaints should be dismissed.

## II.     The Court Is Barred From Reconsidering On Remand The Federal Circuit's Rejection Of Colonial's Physical Taking Claim

In our motion to dismiss, we noted that Colonial appears to continue to allege, on

remand, a physical taking through the appropriation and transfer of its contractual rights to

certain unidentified third parties.  Def.'s Mot. 39-40 (Col.).  Because the Federal Circuit already

rejected Colonial's physical taking claim on interlocutory appeal, the Court should dismiss

Colonial's physical taking claim on remand.  *Id.* at 39 (citing *A&D Auto Sales*, 748 F.3d at 1151,

1151 n.5).

Colonial's response brief confirms that it is attempting to reassert its previously rejected

physical taking claim on remand.  *See, e.g.*, Col. Opp. 6, 19, 22-27.  This Court, however, is

barred from reconsidering the Federal Circuit's decision.

On interlocutory appeal, the Federal Circuit held that plaintiffs had failed to properly

allege the economic loss required to establish a regulatory taking and directed this Court on

remand "to grant [plaintiffs] leave to amend [their complaints] to include specific allegations

establishing loss of value."  *A&D Auto Sales*, 748 F.3d at 1158-59.  The Federal Circuit's

mandate did not implicate, nor did it allow or require further consideration of, Colonial's rejected

physical taking claim.  *See id.* at 1151.  Nor did the appellate court's mandate direct this Court to

grant Colonial leave to amend its complaint to include specific allegations to attempt to support a physical taking – as Colonial did. *Compare* Col. Am. Compl. ¶¶ 48, 74 (ECF No. 20) (Apr. 14, 2011) *with* Col. Am. Compl. ¶¶ 53-54, 69, 89, 97, 115 (ECF No. 101) (Sept. 15, 2014).

Consequently, Colonial is barred from reasserting, and this Court is precluded from further adjudicating, a physical taking claim on remand. *See Suel*, 192 F.3d at 985 (under law of the case doctrine, "a court will generally refuse to reopen or reconsider what has already been decided at an earlier stage of the litigation"); *see also United States v. Minicone*, 26 F.3d 297, 299-300 (2d Cir. 1994) (statement by appellate court that many of appellant's claims are "without merit," without further discussion, precluded the district court from revisiting those issues on remand).

Even assuming, however, that Colonial is not barred from reasserting its physical taking claim on remand (which it is), there still is no support for such a taking. Although Colonial acknowledges that the former dealers' "franchise agreements were terminated" by Chrysler and GM in bankruptcy (Am. Compl. ¶ 97; *see id.* at ¶¶ 58-61, 67), Colonial alleges that the Government appropriated to itself and/or transferred to third parties the dealers' "intangible property rights" and "property interests" in selling Chrysler's and GM's automobiles in exclusive sales territories. *See* Col. Opp. 22-27, 27 n.21 (citing *Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419 (1982)); Am. Compl. ¶¶ 97, 115.

Colonial's allegations regarding the termination of their dealership agreements cannot fit the *Loretto* analysis because a *Loretto*-type taking requires a "permanent physical occupation" of the plaintiff's property. *See Cablevision Sys. Corp. v. F.C.C.*, 570 F.3d 83, 98 (2d Cir. 2009). Colonial does not allege that the United States entered – or permitted others to enter – onto the dealership properties.

Moreover, a claim for compensation for a *per se* "physical" taking requires proof that the plaintiff has suffered a net economic loss. In *Brown v. Legal Foundation of Washington*, the Supreme Court explained that, if "the owner's pecuniary loss . . . is zero" for a potential *per se* taking, "there has been no violation of the Just Compensation Clause of the Fifth Amendment." 538 U.S. 216, 240 (2003). Because Colonial has not properly alleged economic loss (as established above and in our opening brief), Colonial's physical taking claim fails for this additional reason.

Consequently, the Court should dismiss Colonial's previously rejected physical taking claim. *See A&D Auto Sales*, 748 F.3d at 1151.

### III.    The Court Should Not Take Judicial Notice Of Facts And Materials Neither Alleged In Nor Incorporated Into Colonial's Amended Complaint

The Court should refuse to take judicial notice of the voluminous materials cited in Colonial's response brief, just as it did in the initial action. *See* Order, No. 10-647C (ECF No. 39) (Dec. 15, 2011).

On October 3, 2011, Colonial filed a motion requesting that the Court take judicial notice of a book written by Steven Rattner, Congressional and Government reports, news articles, media statements, and other materials cited in Colonial's opposition to our motion to dismiss. Plaintiffs' Motion Regarding Judicial Notice at 1-2 (ECF No. 29) (Oct. 3, 2011). On December 15, 2011, the Court issued an order denying Colonial's motion, holding that plaintiffs could not "use the materials to establish that their allegations are 'plausible.'" Order (ECF No. 39) (Dec. 15, 2011) (quoting *Twombly*, 550 U.S. at 556).

Nevertheless, Colonial's response brief on remand, like its initial response brief, relies almost exclusively upon factual allegations not found in the complaint and materials that were not attached to the complaint. *See, e.g.*, Col. Opp. 1-3, 6-16, 32-36. Indeed, Colonial's 2015

response brief cites to many of the same articles, reports, and other materials cited in its 2011 brief. *Compare* ECF No. 28 at 9-10 *with* ECF No. 110 at 1-2 *and* Col. Opp. ix-xi (TOA). Colonial, however, has not asked the Court, on remand, to take judicial notice of the cited materials. The Court, therefore, should strike the portions of Colonial's response brief that rely upon the materials. *See, e.g.*, Col. Opp. 1-3, 6-16, 32-36.

## IV. The Court Should Deny Spitzer's Request To Amend Its Complaint

Finally, the Court should deny Spitzer' request to again amend its complaint. Spitzer Opp. 9-10. Plaintiffs have failed to cure the deficiencies in their complaints with the amendment previously allowed by the Federal Circuit on interlocutory appeal. *See A&D Auto Sales*, 748 F.3d at 1158 (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). And given that plaintiffs have again failed to properly allege economic loss, there is no reason to believe that they will be able to do so in another amended complaint. Consequently, the Court should dismiss plaintiffs' amended complaints with prejudice.

## CONCLUSION

For these reasons, and the reasons stated in our moving brief, we respectfully request that the Court dismiss plaintiffs' amended complaints.

Respectfully submitted,

BENJAMIN C. MIZER
Acting Assistant Attorney General

s/ Robert E. Kirschman, Jr.
ROBERT E. KIRSCHMAN, JR.
Director

s/ Kenneth M. Dintzer

OF COUNSEL:

ELIZABETH M. HOSFORD
Assistant Director

SETH W. GREENE
VINCENT D. PHILLIPS
Trial Attorneys

KENNETH M. DINTZER
Deputy Director
Commercial Litigation Branch
Civil Division
Department of Justice
P.O. Box 480
Ben Franklin Station
Washington, D.C. 20044
(202) 616-0385
(202) 307-0972 fax
kenneth.dintzer@usdoj.gov

April 7, 2015

Attorneys for Defendant